UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Tyler Andre<br>1160 1st Street NE, #403<br>Washington, DC 20002<br><br>              **Plaintiff,**<br>v.<br><br><br>Sabre Inc.<br>3150 Sabre Drive<br>Southlake, TX 76092<br><br>              **Defendant.**<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br>Case No. 1:14-cv-00013<br><br><br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

**COMPLAINT**
**AND DEMAND FOR JURY TRIAL ON ALL ISSUES**

COMES NOW Tyler Andre ("Plaintiff"), by and through his undersigned counsel, and alleges against Sabre, Inc. ("Defendant") claims, including violations of the Military Family Leave Provisions of the Family and Medical Leave Act ("FMLA") and violations of the District of Columbia Human Rights Act of 1977 ("DCHRA") for discrimination based on sexual orientation and marital status. Plaintiff sets forth the facts, claims and seeks relief as follows:

**JURISDICTION AND VENUE**

1. This court has original jurisdiction pursuant to 28 U.S.C. § 1331, federal question jurisdiction.

2. This court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as at all relevant times herein Plaintiff has resided in the District of Columbia ("DC"), and Defendant's principal place of business is in Texas. Additionally, the amount in controversy exceeds $75,000.

1

3. Venue in this court is proper pursuant to 28 U.S.C. § 1391 as Plaintiff is a resident of the District of Columbia, and Defendant does business in the District of Columbia and thus satisfies the personal jurisdiction requirement.

## PARTIES

4. Plaintiff is a natural person and at all relevant times herein, has been a resident of the District of Columbia.

5. Defendant is a corporation incorporated in Delaware and headquartered in Southlake, Texas.

## FACTUAL ALLEGATIONS

6. Plaintiff is a homosexual male.

7. Plaintiff started employment with Defendant in October 2007 as a Senior Account Manager working in the District of Columbia from his home.

8. After having worked on different accounts and under different managers, Plaintiff eventually began working in Defendant's Global Accounts Division. He was assigned to the team for Defendant's "Get There" brand and specifically on the account for BCD Travel ("BCD"), who was a reseller of Defendant's product.

9. On or about March 18, 2013, Plaintiff married a member of the same sex in the District of Columbia.

10. On or about Spring 2013, Plaintiff informed Defendant that his spouse was joining the military. He discussed the prospect of relocating with his spouse if it would work with his work schedule, which wouldn't have been too problematic as he worked from home. However, since Plaintiff did not know where his spouse would be assigned, the conversation was purely hypothetical.

11. On or about June 2013, the Defense of Marriage Act ("DOMA") was struck down by the Supreme Court, allowing couples in homosexual marriages to have the same benefits in the military as heterosexual married couples.

12. On or about August of 2013, Plaintiff learned that his spouse would be transferred to Hawaii for the Army. After looking at his options, he spoke to his supervisor, Ms. Palermo, on or about August 15, 2013 about working the fourth quarter of 2013 in Hawaii to get things taken care of there and then coming back to the continent. He explained that he couldn't get much of it taken care of in DC as the military systems had not been updated to include same-sex couples and thus, it was not an easy transition to take on. During this call, Plaintiff told Ms. Palermo that his other option was to file for FMLA under one of the newly enacted military family leave provisions allowing military spouses to take time off for these things, which was something that would not have been allowed had DOMA not been struck down. He was told that if he applied for FMLA, he was going to "piss a lot of people off."

13. On or about August 23, 2013, Plaintiff was given a raise after receiving an excellent performance review.

14. On or about August 26, 2013, Plaintiff was told by Defendant that his request to work the fourth quarter of 2013 from Hawaii was denied. He was told that the time difference would be an issue, and that because they were so busy and he was so valuable on the account, they could not approve him working from Hawaii.

15. That same day, being left with no other option, Plaintiff applied for FMLA under a military family leave provision with Cigna, Defendant's third party FMLA administrator. He submitted the required documentation and was approved for his leave on or about August 28, 2013.

16. On or about August 29, 2013, Plaintiff told Ms. Palermo that he had applied for and was approved for three months of FMLA leave beginning in September. Although he wasn't sure he would take all three months together and was willing to work around the military requirements and Defendant's needs, Ms. Palermo was at first speechless, then became very upset, yelling at Plaintiff, and stating something to the effect that he went and "married this man in the military and now the company had to suffer because of it."

17. On or about August 30, 2013, the day after informing Ms. Palermo of his FMLA approval, Plaintiff was taken off the BCD account. This occurred during a call between Defendant and BCD wherein a problem was discussed regarding another employee from Plaintiff's team, and it was suggested, as clear pretext for Plaintiff being approved for his FMLA leave, that Plaintiff also be removed from the account.

18. Plaintiff learned he was taken off the account on or about September 5, 2013. Plaintiff was informed of his removal on a day that he had off from work, being told he would be put on special projects instead.

19. Plaintiff was very shocked that the client would want him off the account, especially given that one of the executives had given him a letter of recommendation for graduate school less than a year prior. However, BCD had been having problems with some of the technology they had sold a new client, Cargill, Inc. that had just launched in South America. This technology had multiple bugs in it, some of which were known Defendant and was purposefully not disclosed to BCD to encourage people to buy directly from Defendant, rather than a reseller. Multiple calls were had between Defendant and BCD about these issues. As Defendant was aware of many of the bugs, they had easy fixes for some of them, but didn't want to pass this information along. After much back and forth, Defendant eventually told BCD they

would get them that information to help the process transition more smoothly. However, despite repeated attempts by Plaintiff to get this info from Defendant and to BCD, Defendant was still unwilling to give it out. Nevertheless, the issues BCD were having was not with Plaintiff and he was commended on his performance multiple times.

20. On or about September 5, 2013, the same day Plaintiff was informed that he was taken off the BCD account, he was also notified that his FMLA approval was being re-reviewed per request. He inquired as to why, but was told that no further information could be given. He was not required to resubmit his information or submit any additional information.

21. Over the course of the next week, Plaintiff inquired as to the status of his FMLA request with Cigna and kept getting the runaround. He was told he would hear on a certain time or day and wouldn't, that someone would call him back and they wouldn't, etc. He was finally given a definitive time of 1:00 pm September 12, 2013 to be given his final answer regarding his approval.

22. On September 12, 2013 at approximately 12:30 pm, Plaintiff received a call from Defendant notifying him that he was being terminated as his position was being eliminated. However, his co-workers were told he was terminated based on a phone call he had with his supervisor, obviously referring to the discussion regarding his FMLA approval.

23. Shortly after Plaintiff concluded his call with Defendant, at 1:00 pm as agreed, he received a call from Cigna notifying him that his application for FMLA leave was reapproved but that it already showed up in their system that he was terminated so they couldn't formally put it in.

24. During the course of Plaintiff's employment, he learned that he was paid less than his peers. His title was a Senior Account Manager, but in fact he was a Director. His duties,

responsibilities, etc. were that of a Director, but because of how things were set up on the account he was working on, his title was different and he was paid less than others doing his same job. Additionally, he learned his only counterpart who worked for a similar team and had same title as Plaintiff was in fact given a different "duty code" in order to receive more compensation than he was. As such, he was the only one purposefully excluded from receiving the same pay level as his peers.

25. As a result of Defendant's actions, Plaintiff has suffered losses financially and emotionally, which has also manifested itself physically.

**COUNT I – RETALIATION IN VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**

26. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

27. The FMLA prohibits employers from discriminating or retaliating against employees for trying to exercise their rights under the Act. See 29 U.S.C. § 2615(a)(1)-(2); 29 C.F.R. § 825.220. The employer is, for example, prohibited from "retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 C.F.R. § 825.220(c).

28. In order to establish a retaliation claim under the FMLA, "a plaintiff must establish: (1) that he engaged in a statutorily protected activity; (2) that the employer took adverse personnel action; and (3) that a causal connection existed between the two.

29. Plaintiff engaged in a statutorily protected activity by requesting and being approved for FMLA leave in August 2013.

30. Defendant took adverse personnel action against Plaintiff as a result of this requested and approved leave, by removing him from the BCD account one day after Plaintiff

informed Defendant that he was approved for FMLA leave, and then by terminating him approximately two weeks later, the same day Plaintiff was reapproved for such leave.

31. A causal connection exists between the protected activity and the adverse personnel actions as they are close in time and proximity to the protected activity.

32. As a result of this retaliation, Plaintiff has suffered financial and emotional damages.

**COUNT II – DISPARATE TREATMENT DISCRIMINATION BASED ON SEXUAL ORIENTATION UNDER THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT**

33. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

34. To establish a prima facie case of discriminatory termination under (DCHRA), a plaintiff generally must demonstrate: (1) that he was a member of a protected class; (2) that he was qualified for the job from which he was terminated; (3) that his termination occurred despite his employment qualifications; and (4) that a substantial factor in his termination was his membership in the protected class.

35. Plaintiff is a member of a protected class as he is a homosexual male.

36. Plaintiff was qualified for the job as he had been doing it for several years, receiving favorable reviews, praise, raises, etc.

37. Plaintiff's termination occurred despite his qualifications and good reviews.

38. His sexual orientation was a substantial factor in his termination as it was not until he got married to a member of the same sex and requested time off as a result of his spouse's military status that he went from being so necessary to the company that he couldn't take time off, to being removed from the BCD account and his position eliminated. This happened so extremely close in time and proximity that it could not have been a coincidence. Additionally,

7

the comments made by Defendant during this time regarding his marrying a man further show that this was based on sexual orientation.

39. As a result of this discrimination, Plaintiff has suffered financial and emotional damages.

### COUNT III –DISCRIMINATION IN PAY BASED ON SEXUAL ORIENTATION UNDER THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

40. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

41. The DCHRA makes it unlawful to discriminate with respect to a person's compensation, terms, conditions, or privileges of employment as a result of his sexual orientation.

42. Plaintiff was discriminated against based on his sexual orientation when he was not paid as much as his heterosexual peers for the same duties, responsibilities, and even title. This is evident as his heterosexual peers were paid more than he was as the only openly homosexual man, who was married to a member of same sex. This clearly gives rise to an inference of discrimination.

43. As a result of this discrimination, Plaintiff has suffered financial and emotional damages.

### COUNT IV –DISCRIMINATION BASED ON MARITAL STATUS UNDER THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT

44. Plaintiff re-alleges and incorporates the allegations of the previous paragraphs as if fully set forth herein.

45. The DCHRA makes it unlawful to discriminate with respect to a person's compensation, terms, conditions, or privileges of employment as a result of his marital status.

46. Plaintiff was discriminated against based on marital status when he was terminated from his position for requesting FMLA under a military family leave provision regarding his spouse. Plaintiff would not have been afforded this benefit if DOMA had not been struck down, and his leave would likely not have been approved. Additionally, this discriminatory animus is clear in the comments made by Defendant regarding his marital status affecting the company as a result of his approved leave.

47. As a result of this discrimination, Plaintiff has suffered financial and emotional damages.

WHEREFORE, Plaintiff, Tyler Andre, prays for judgment against Defendant for not less than $15 million as follows:

   a. That judgment be entered in his favor against Defendant;
   b. For liquidated damages, including back pay and front pay;
   c. For compensatory damages for pain and suffering;
   d. For other general and special damages;
   e. For punitive damages in an amount sufficient to punish and set an example of the Defendants;
   f. For attorney's fees and other costs of bringing suit;
   g. For prejudgment interest;
   h. For such other relief that the court deems just and proper.

### REQUEST FOR JURY TRIAL

Plaintiff respectfully requests that all matters contained in this Complained be tried by Jury.

Respectfully Submitted,

THE BEZDICEK LAW FIRM, PLLC

Dated: January 3, 2014

By:

   /s/ Jennifer L. Bezdicek, Esq.
Jennifer L. Bezdicek [Bar # 979041]
Sofia Yazykova [Bar #1004969]
20 F Street NW, Suite 700
Washington, DC 20001
(202) 617-0707
jbezdicek@bezdiceklaw.com